LaPORTE TRANSIT CO., INC.,
Appellee,

v.

LOCAL UNION NO. 301, CHAUFFEURS, TEAMSTERS AND HELPERS et al., Appellants.

No. 80–1327.

United States Court of Appeals, Seventh Circuit.

Heard Nov. 4, 1980.

Decided Jan. 16, 1981.

Rehearing Denied Feb. 20, 1981.

Sheldon M. Charone, Chicago, Ill., for appellants.

James C. Hardman, Chicago, Ill., for appellee.

Before FAIRCHILD, Chief Judge, WISDOM, Senior Circuit Judge,[*] and CUMMINGS, Circuit Judge.

CUMMINGS, Circuit Judge.

Plaintiff brought this action under the Labor Management Relations Act (29 U.S.C. § 141 et seq.). Plaintiff is engaged in the business of carrying freight in interstate commerce by motor vehicle. According to the complaint, defendant Local Union 301, Chauffeurs, Teamsters and Helpers (Local 301) and co-defendant International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (International Union) engaged in a strike and picketed plaintiff's truck terminal near La-Porte, Indiana, from August 22, 1976, until October 31, 1976. The object of the strike was said to be to force plaintiff to assign work to employees in Local 301 rather than to employees in another labor organization. This was said to violate Sections 8(b)(4)(D) and 303 of the Labor Management Relations Act[1] (29 U.S.C. §§ 158(b)(4)(D) and 187). As a result of the strike and picketing, plaintiff claimed to have been damaged in the amount of $425,000.

After a bench trial, Judge McMillen decided the issue of liability in favor of plaintiff and referred the case to a magistrate for a recommendation on the amount of damages. Magistrate Balog subsequently recommended that plaintiff be awarded $313,881.88. After revising his recommendation in February 1980, the district court entered judgment against the defendants jointly and severally in the amount of $338,-140.07 and costs. Thereupon defendants appealed. We reverse.

*Factual Setting*

Plaintiff and defendant Teamsters Local 301 were parties to a collective bargaining agreement governing the employment of a truck driver whose duties were to pick up freight and deliver it within Lake and McHenry Counties, Illinois, with a truck maintained in Libertyville, Illinois. The drivers at plaintiff's main terminal in La-Porte, Indiana, were members of Teamsters Local 298, which had a collective bargaining agreement with plaintiff governing the

---

[*] The Honorable John Minor Wisdom, Senior Circuit Judge of the Fifth Circuit of the United States, is sitting by designation.

1. Section 8(b)(4)(D) makes it an unfair labor practice for a labor organization or its agents to resort to a strike or coercion where an object thereof is

> "forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work."

Section 303 provides:

> "(a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 8(b)(4) of the National Labor Relations Act, as amended.
>
> "(b) Whoever shall be injured in his business or property by reason of any violation of subsection (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of section 301 of the National Labor Relations Act, as amended [29 U.S.C. § 185] without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit."

terms and conditions of employment of the Indiana drivers.

The record shows that plaintiff motor common carrier operated in interstate commerce between points in northern Indiana and northern Illinois. Its only terminal was in LaPorte, Indiana, and its drivers operating from that terminal were members of Local 298.

Plaintiff employed Robert Schotanus to drive a truck parked in Libertyville, Illinois, to make pickups and deliveries in Lake and McHenry Counties, Illinois. Freight picked up by Schotanus was transferred in Chicago to another truck and driven by a Local 298 driver to LaPorte. Freight to be delivered in Lake and McHenry Counties was handled in reverse fashion.

On December 19, 1975, Local 301 notified plaintiff that the collective bargaining agreement between them and covering Schotanus was being terminated by the Local on its expiration date, *viz.*, March 31, 1976.

On and after December 9, 1975, plaintiff notified Local 301 that as of April 1, 1976, it would conduct all its operations from the LaPorte, Indiana, terminal and would utilize only Local 298 drivers stationed there, pursuant to its collective bargaining agreement with Local 298 and with the concurrence of that Local's officials, to service southern Wisconsin and northern Illinois.

On March 25, 1976, plaintiff wrote Schotanus that he should report to LaPorte effective April 1, 1976, to drive his truck and to transfer his affiliation to Local 298. The Secretary-Treasurer of Local 301 thereupon wrote plaintiff that it would hold plaintiff responsible for any damages to Schotanus. Although the truck in question was transferred to LaPorte upon termination of plaintiff's contract with Local 301 and despite plaintiff's offer to pay his moving expenses, Schotanus did not appear there for work nor transfer his affiliation to Local 298. He is no longer employed by plaintiff.

On April 1, 1976, the day after the collective bargaining agreement between Local 301 and plaintiff had expired, Schotanus and Local 301 filed grievances concerning plaintiff's action. A Joint Grievance Committee decided the matter in favor of Schotanus and Local 301 on April 14, 1976.

On August 22, 1976, Local 301 personnel picketed plaintiff's LaPorte terminal and induced some Local 298 personnel to join in the picketing and strike, thus stopping the operations of plaintiff. Local 301 stated that the picketing and strike were authorized by defendant International Union which assertedly paid strike benefits to personnel of both Locals. The picketing and strike did not cease until October 31, 1976, and were for the purpose of forcing plaintiff to comply with the Joint Grievance Committee's award favoring Local 301 and Schotanus.

On August 25, 1976, plaintiff notified its employees that it considered the dispute to be between Locals 298 and 301 rather than between plaintiff and its employees. Also on August 25, the Central Conference of Teamsters notified plaintiff that the work stoppage had been authorized by the defendant International Union because plaintiff had refused to comply with the grievance award.

On October 27, 1976, plaintiff and Local 301 executed a memorandum of agreement resulting in the termination of the picketing and the withdrawal of the claims of Local 301 and Schotanus.[2] After Local 301's picketing was terminated, Local 298's members returned to work for plaintiff. This suit for damages followed in March 1978.

---

2. Under the settlement agreement, plaintiff agreed to recognize Local 301 as the collective bargaining agent of plaintiff's drivers "if it ever established a terminal, garage, or stations equipment in the Counties of Lake and McHenry in the State of Illinois * * *" (App.23). In turn, Local 301 agreed to waive any claim to work performed by Local 298 members from a terminal outside Lake and McHenry Counties. Plaintiff agreed to pay Schotanus' claims from April 1, 1976, to August 21, 1976 (App.23).

*Decisions of the District Court*

In his first decision, Judge McMillen stated that the strike by Local 298 was because of plaintiff's failure to abide by the decision of the Joint Grievance Committee under the expired contract between plaintiff and Local 301 awarding Schotanus his claim for wages and fringe benefits and awarding Local 301 work performed under the former collective bargaining agreement with respect to southern Wisconsin and northern Illinois.

The district judge held that the Joint Grievance Committee's award was without basis since there was no contract between plaintiff and Local 301 after March 31, 1976, and Schotanus had been fully paid up to that date when he refused to transfer to LaPorte and join Local 298. Therefore, the court stated that plaintiff had a threefold remedy: to sue to set aside the award, to sue Local 298 for a contract violation arising from its strike, or to sue these defendants under Sections 8(b)(4)(D) and 303 (App. 6–7).

The district judge concluded that defendant Local 301 had engaged in jurisdictional picketing but not a strike at plaintiff's LaPorte premises and had encouraged Local 298 to engage in a strike. He found that the International Union had authorized and supported the activities of both Locals and held that the defendants had violated Section 8(b)(4)(D) because their actions were designed to require the plaintiff to assign work to a member of Local 301 rather than to members of Local 298.

Finally, the district court held that the October 27, 1976, settlement agreement between Local 301 and plaintiff did not release Local 301 or the International Union from this action for damages.

In his second decision, Judge McMillen modified the magistrate's recommendation on damages by finding that plaintiff's lost profits for 1976 total $283,936.09 and that in 1977 its lost expected net operating income was $54,203.98 or a total of $338,140.07 and that plaintiff had mitigated its damages as much as possible. The court denied plaintiff an additional $3,080 for unemployment tax contributions under an Indiana statute and refused to reimburse plaintiff for attorney's fees. We hold that there was no jurisdictional dispute between defendants and Local 298 during the entire work stoppage so that Sections 8(b)(4)(D) and 303 of the Act (note 1 *supra*) afforded plaintiff no relief.

*Absence of Jurisdictional Dispute*

Because Local 298 never claimed the work during the picketing but throughout that period consistently supported Local 301's claim, it was erroneous to hold that Locals 298 and 301 were striking to resolve a jurisdictional dispute so that Section 8(b)(4)(D) was violated by Local 301 and the authorizing International Union. Instead Local 298 was disclaiming the work by helping Local 301 to retrieve it during the entire work stoppage.

It is well settled that Section 8(b)(4)(D) and related Section 10(k) of the Labor Management Relations Act were designed to resolve or prevent jurisdictional disputes.[3] As the Supreme Court explained in *National Labor Relations Board v. Radio Engineers (CBS)*, 364 U.S. 573, 579, 81 S.Ct. 330, 334, 5 L.Ed.2d 302, the reference in Section 10(k) to Section 8(b)(4)(D) is to a jurisdictional dispute "which is a dispute between two or more groups of employees over which is entitled to do certain work for an employer." Similarly, as in *National Labor Relations Board v. Plasterers' Union*, 404

---

**3.** Section 10(k) provides:

"Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(D) of section 8(b) [note 1 *supra*], the [Labor] Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they had adjusted, or agreed upon methods for the voluntary adjustment of, the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed." (29 U.S.C. § 160(k).)

U.S. 116, 135, 92 S.Ct. 360, 371, 30 L.Ed.2d 312, if, as here, one union disclaims the work by supporting another union, there is no jurisdictional dispute because the applicability of Sections 10(k) and 8(b)(4)(D) "is premised on conflicting claims of unions or groups of employees for the same job * *." Accordingly, in the *Plasterers' Union* case, the Court approved the Labor Board's *Safeway* rule[4] that a jurisdictional dispute within the purview of Section 10(k) and 8(b)(4)(D) only exists when there are rival claims to the work. 404 U.S. at 134, 92 S.Ct. at 371.

The present lawsuit could succeed only if during the August 22—October 27, 1976, picketing and work stoppage the two Locals were engaged in a jurisdictional dispute by claiming the same work. However, the record is clear that rather than contesting Local 301's right to the work, Local 298 joined in the work stoppage in order to compel plaintiff to comply with the Joint Grievance Committee's April 14, 1976, decision awarding Local 301 member Schotanus all wages and fringe benefits that he lost or would lose until reinstated and holding that plaintiff's work performed within Kane, Lake and McHenry Counties and the northern part of Cook County, Illinois, "shall remain performed by the employees" represented by Local 301 (App.27).

The complaint herein is limited to the period August 22, 1976, until the picketing and strike ceased on or about October 31, 1976 (Record Item # 1, par. 3). Yet plaintiff has been unable to show that during that entire time Local 298 was ever seeking to perform the work that had been performed by a Local 301 member.

Defendant International Union is implicated in this lawsuit only because it authorized the work stoppage on or before August 26, 1976.[5] In truth, the authorization to Local 301 apparently occurred on or before August 22, the date of the commencement of the work stoppage (see Tr. 24–25, 124). Since, as seen, during the period of the work stoppage there was no jurisdictional dispute between the two Locals, the International Union's authorization of the work stoppage also did not violate Section 8(b)(4)(D) of the Act.

As in the landmark *Safeway* case involving Section 10(k) of the Act and therefore necessarily Section 8(b)(4)(D) (see notes 1 and 3 *supra*), plaintiff created this dispute by transferring work away from Local 301, the strike here was in protest against plaintiff's action, and the strike was not by two competing employee groups, but was rather by two local unions seeking to enforce the Joint Grievance Committee's award in favor of Local 301. Such a strike does not constitute a jurisdictional dispute implicating Section 8(b)(4)(D). Consequently, plaintiff was not entitled to recover damages under Section 303 (note 1 *supra*). As a result, it is unnecessary for us to consider the other arguments presented by the parties.

The judgment of February 8, 1980, is reversed with instructions to enter judgment in favor of both defendants.

---

4. *Highway Truckdrivers, Local 107 (Safeway Stores, Inc.)*, 134 NLRB 1320 (1961) is the pioneer authority. It has been followed ever since. See *Plasterers' Union, supra*, 404 U.S. at 134, 92 S.Ct. at 371, see also *Sheet Metal Workers Local 9 (John E. Davis)*, 183 NLRB 443 (1970); *Local 272, Sheet Metal Workers Union (Valley Sheet Metal)*, 136 NLRB 1402 (1962); *Teamsters Local 70 (Hills Transportation)*, 136 NLRB 1086 (1962).

5. An August 26, 1976, telegram from the International Union to plaintiff stated that the International Union had authorized the work stoppage in order to enforce the Joint Grievance Committee's April 14 award in favor of Schotanus and Local 301 (Pl. Exhibit G).